**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ANKUS, L.L.C.** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-cv-00355** |
| | § | |
| **PHH MORTGAGE CORP.** | § | |
| *Defendants.* | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Ankus L.L.C., a Texas Limited Liability Company, Plaintiff, files this Plaintiff's Response to Defendants' Motion For Summary Judgment.

### NATURE OF RESPONSE

1. Plaintiff has filed this lawsuit seeking a Declaratory Judgment against PHH because and, based on the evidence and documents in this case, enforcement of PHH's Deed of Trust lien is barred by the Texas four (4) year statute of limitations.

2. At a minimum, there are questions of fact which preclude summary judgment.

3. For these reasons, Defendants' Motion For Summary Judgment should be denied.

4. In this case, Plaintiff Ankus seeks a Declaratory Judgment which declares that enforcement of the Deed of Trust is barred. Ankus also seeks a Judgment which strikes and cancels the Deed of Trust as a cloud on Ankus's title to the Property because enforcement of the Deed of Trust is barred by the Texas four-year statute of limitations and is void.

5. The summary judgment evidence supports Ankus's claims because the Note which is secured by the Deed of Trust lien was certainly accelerated and matured on November 3 2015, and the Deed of Trust was not foreclosed within (4) years of that date.

1

6.      In Ankus's most recent Complaint Ankus has claimed that the indebtedness had been accelerated certainly by November 3, 2015. Additionally, the evidence establishes that PHH sent an additional Notice of Acceleration on October 5, 2016. In this Response, Ankus will address only the acceleration of the debt on November 5, 2015, which acceleration is undisputed and is even admitted by PHH. The Notice of Acceleration is attached as an exhibit to PHH's Motion. By reference to the acceleration on November 3, 2015, Ankus does not waive the argument that the Deed of Trust would also be barred by the acceleration by the second acceleration by PHH dated October 5, 2016.

## PARTIES

7.      Plaintiff is Ankus, L.L.C., a Texas Limited Liability Company ("Ankus").

8.      Defendant is PHH Mortgage Corp. ("PHH").

9.      Demetrius Harris ("Harris") was the prior owner of the Property and was the maker of the Note and the grantor in the Deed of Trust. Harris is not a party to this lawsuit.

## OBJECTIONS TO DEFENDANT'S MOTION AND EVIDENCE

10.      At the outset, PHH goes to great lengthy to make a number of derogatory statements as to Ankus without any evidence or factual basis to support theses accusations.

11.      All of these accusations are totally without any factual basis or support.

12.      The same accusations could be made about PHH but any accusations regarding either Ankus or PHH are totally irrelevant and the Court should not consider any of these statements in the consideration of the issues in this case.

13.      In this case Ankus is not requesting the Court to approve or sanction the actions of either Ankus or PHH.

2

14.     Ankus is simply requesting the Court to follow the applicable law as it applies to the facts of this case.

15.     As discussed below, the facts establish that the Note in this case was accelerated and the Deed of Trust was not foreclosed within the applicable time period under Texas law.

16.     Under the applicable law, enforcement of the Deed of Trust is barred by the Texas four (4) year statute of limitations and the Deed of Trust is void.

17.     Additionally, one of the lynchpins of PHH's arguments in their Motion is their claim that Demetrius Harris, the borrower on the Note was on active duty in the military and therefore, PHH was not able to proceed with the foreclosure sale under the Servicemember's Civil Relief Act (the "SCRA").

18.     Unfortunately, PHH offers no evidence to support any of these statements PHH attempts to establish that Harris was on active duty in the military based on the following: 1) an email (PHH Ex. 6) from Harris in which he makes an inquiry regarding his entitlement to relief; 2) various internal emails from and to PHH employees (PHH Ex. 6); and 3) a Certificate from the Unites States Department of Defense (PHH Ex. 9). This Certificate proves nothing and is basically worthless.  The Certificate does not properly identify to whom it applies.  The person in the Certificate is identified only as "Harris." The Certificate is dated as of October 29, 2020. There is no first name (not even an initial), no complete social security number, and no date of birth.. Obviously, at any given moment, there would be someone in the U.S. Military with the last name of "Harris."  This certainly does not offer any evidence that Demetrius Harris was on active duty during the time claimed by PHH.

19.     This document is totally worthless, irrelevant, and without proper authentication.

20.    Ankus objects to all of the evidence and to any factual statement in which PHH attempts to justify its claim that it could not proceed because Harris was on active duty and was entitled to benefits under the SCRA.

21.    Any claims or statements by PHH that the SCRA prevented PHH from proceeding is totally without any factual support and any statement or claim by PHH must be disregarded.

## NATURE OF DISPUTE AND PROCEDURAL BACKGROUND

22.    This case involves the validity of a Deed of Trust lien held by PHH.

23.    This case was originally filed in the District Court of Harris County, Texas on December 29, 2021.

24.    Defendant PHH filed its Notice of Removal on February 2, 2022.

## FACTS

25.    Plaintiff is the owner of a certain tract of land located in Harris County, Texas (the "Property") which is known as 9510 Gentry Shadows Lane, Houston, Texas 77396 and is legally described as:

> Lot Fifteen (15) inclusive in Block One (1), in Canyon Gate at
> Parklake, Sec. 12, an Addition in Harris County, Texas, according
> to the Map or Plat recorded in Film Code 612169 of the Map
> Records of Harris County, Texas, and commonly known as 9510
> Gentry Shadows Lane, Humble, Texas 77396.

26.    Ankus is not the borrower on the Note having purchased the Property at a Constable's Sale on May 1, 2018. Ex.1.

27.    August 10, 2009, Demetrius L. Harris, the prior owner of the Property, executed and delivered a Deed of Trust (the "Deed of Trust") (PHH Ex. A-2) to secure USAA Federal Savings Bank ("USAA") and Mortgage Electronic Registration Systems, Inc. (MERS"), which purported to create a lien on the Property to secure a Note (the "Note") (PHH Ex. A-1). in the

principal sum of $282,955.00 payable to USAA. The Deed of Trust was filed of record under Harris County Clerk's File Number 20090364928 in the Real Property Records of Harris County, Texas.

28.    The Deed of Trust was allegedly assigned to Defendant PHH.

29.    Ankus has owned this Property for more than five (5) years and Demetrius Harris, the prior owner of the Property had been in default of the Note for several years prior to Plaintiff's acquisition of the Property. In fact, Harris defaulted soon after the loan was closed in 2009. Attached as Exhibits are, a Notice of Acceleration of Maturity dated November 3, 2015, and a Notice of Substitute Trustee's Sale, dated no later than November 3, 2015, which posted the Property for a foreclosure sale scheduled for December 1, 2015. Ex. 2. These Notices clearly state that the entire balance was due. Because the Property was posted for foreclosure, the Note had been accelerated on November 3, 2015, and possibly earlier. Defendant PHH's right to enforce the Deed of Trust is barred by the four-year statute of limitation stated in § 16.035 of the Texas Civil Practice and Remedies Code.

30.    Also attached as Exhibits are a Notice of Acceleration of Maturity, dated October 5, 2016 and a Notice of Trustee's Sale dated October 6, 2016, which gave notice of a Trustees Sale for December 6, 2016.  Ex.3.  These Notices again state that the Note and indebtedness had been accelerated.

31.    The Property is located in the Canyon Gate at Park Lakes Section 12 Subdivision, which is subject to certain Deed Restrictions which requires the owners of lots located within the subdivision to pay assessments to the Park Lake Property Owners Association, Inc. (the "HOA") which is the homeowners association for the subdivision.

32.    Harris failed to pay the assessment and on December 28, 2015, the HOA filed a

lawsuit against Harris styled *Park Lakes Property Owners Association Inc. v. Demetrius L. Harris*, Case No. 1071735 in the Harris County Civil Court No. 3. Ex. 4.

33.     On September 9, 2016, the HOA filed its Plaintiff's Motion For Default Judgment Ex. 5.  Attached to this Motion is a Plaintiffs' Soldier and Sailor Affidavit which attaches a Certificate for Demetrius L. Harris that as of September 2, 2016, Harris was not on active duty in any of the branches on the U.S. Military (Army, Navy, Marine Corps, Air Force, NOAA, Public Health and Coast Guard).

34.     On September 28, 2016 Harris County Civil Court No. 3 granted the HOA a Judgment against Harris for the past due assessments and ordered the Property to be sold. Ex. 6.

35.     On May 1, 2018, the Property was sold at a Constable's Sale conducted by the Harris County Constable to Ankus. Ex. 1.

36.     A deed of trust must be foreclosed within four (4) years of the date the indebtedness is accelerated or enforcement is barred and the deed of trust is void.  Tex. Civ. Practice and Remedies Code §16.035.

37.     In addition to the Notices which specifically  state that the indebtedness had been accelerated, under Texas law a notice of trustees sale is considered to be an acceleration of the debt. See *Joy Corp. v. Nob Hill Properties, Ltd.* 543 S.W.2d 691 (Tex. App. – Tyler 1976, no pet).

38.      Defendant PHH's right to enforce the Deed of Trust is barred by the statute of limitation stated in §16.035 of the Texas Civil Practice and Remedies Code.

## LEGAL ARGUMENTS

### The Court must look to Texas law on the issues of the statute of limitations and tolling

39.     At the outset, it must be noted that this is a diversity case and the Court must apply the Texas statute of limitations and its accompanying tolling rules.  See *Bloom v. Aftermath Pub*

*Adjusters, Inc.*, 902 F 3d 516, 517-18 (5th Cir. 2018); *Jorrie v. BNY Mellon, Trustee*, 740 F. 3d 809 (5th Cir. 2018)

40.     Under Texas law the applicable statute of limitations for a nonjudicial foreclosure sale under a deed of trust is stated in §16.035 of the Texas Civil Practice and Remedies Code, which states:

> §16.035.  Lien on Real Property
>
> …
>
> (b) A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the date of cause of action accrues.

41.     The statute of limitations commences on the maturity date of a note.  *Castillo v. BB&T Co.*, 05-19-00584-CV (Tex. App.-Dallas 2020, no pet); *Hardy v. Wells Fargo Bank, N.A.,* 01-12-00945 (Tex. App. – Houston [1[st] Dist.] 2014, no pet.).

42.     Under Tex. Civ. Prac. & Rem. Code §16.035, in Texas a foreclosure sale under a deed of trust must be held within four (4) years of the date of maturity or enforcement is barred. *Id.*

43.     If a note or deed of trust contains an optional acceleration clause, the cause of action accrues (and the statute of limitations starts to run) when the holder accelerates its option to accelerate. *Khan v. Gbak Props., Inc.,* 371 S.W. 3d 347, 353 (Tex. App.-Houston [1[st] Dist.] 2012, no pet.)

44.     Because the Note in this case matured when the Note was accelerated, certainly by November 3, 2015, PHH had four years from this date to enforce the Deed of Trust or enforcement would be barred by the Texas four-year statute of limitations.

45.    Four years from November 3, 2016, is November 3, 2019.  It is undisputed that the Deed of Trust was not foreclosed by this date.  To date, almost eight (8) years have passed, and the Deed of Trust still has not been foreclosed.

46.    The purpose of the statutes of limitations is to compel plaintiffs to assert their claims "within a reasonable period while the evidence is fresh in the minds of the parties and witnesses." *Wagner & Brown, Ltd. v. Harwood*, 58 S.W. 3d 732, 734 (Tex. 2001) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W. 2d 453, 455 (Tex. 1996); see *Murray v. San Jacinto Agency, Inc.,* 800 S.W. 2d 826, 828 (Tex. 1990); *Medina v. Tate*, 438 S.W. 3d 583, 598 (Tex. App.-Houston [1st Dist.] 2013, no pet.).

47.    Since the Note matured by at least November 3, 2015, unless tolled or extended, the enforcement of the Deed of Trust would be barred unless the Deed of Trust had been foreclosed prior to November, 2019.

48.    Where a sale under a deed of trust has not occurred within four (4) years of the date of maturity, the deed of trust is void.  *The Cadle Co. v. Butler*, 951 S.W.2d 901 (Tex. App.- Corpus Christi 1997, no pet.); *Woodside Assurance, Inc. v. N.K. Resources, Inc.,* 175 S.W. 3d 421 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

49.    In the present case, Ankus has provided proof that the debt was accelerated as of November 3, 2015.  See Exhibit 2.  PHH admits that the Note was accelerated.

50.    Therefore, under Texas law, a sale under the Deed of Trust had to be completed within four (4) years or enforcement would be barred and the Deed of Trust would be void.

51.    Since the Note was accelerated, certainly by November 3, 2015.  Defendant had four (4) years, in which to conduct the sale under the Deed of Trust which it did not do.

52.    Since the sale was not conducted within four (4) years from the date of acceleration, enforcement was and is barred under Texas law.  Tex. Civ. Prac. and Remedies Code §16.035.

**The debt was accelerated**

53.    As stated above, Ankus will only address the issues which occurred after the acceleration on November 3, 2015 and whether there is any evidence to establish that the acceleration was abandoned.

54.    First, it is not disputed that the debt was accelerated on November 3, 2015.  The acceleration was contained in a letter from the PHH's attorneys in which it is stated, in bold and capital letters:

**NOTICE OF ACCELERATION OF MATURITY**

55.    In the body of the letter, it states:

"Notice is hereby given that the present legal holder of the note HAS ACCELERATED THE MATURITY OF THE NOTE.

56.    This is very direct language that the loan was accelerated, at least by November 3, 2015.

57.    The inquiry then shifts to where the acceleration was abandoned.

58.    The acceleration was not abandoned.

59.    Once a loan has been accelerated, there are several was the acceleration can be abandoned such as an agreement between the parties, payment on the indebtedness which payments are accepted by the noteholders, notice form the noteholder that the acceleration has been rescinded, and finally whether certain actions on the part of the noteholder have abandoned acceleration.

60.    Because the undisputed evidence established that the debt was accelerated in November 3, 2015, PHH had four (4) years from this date to enforce the Deed of Trust or

enforcement would be barred by the Texas four-year statute of limitations.

61.    Four (4) years is from November 3, 2015, is November 3, 2019. It is undisputed that the Deed of Trust was not enforced by this date. Almost eight (8) years have now passed, and the Deed of Trust still had not been enforced.

62.    The purpose of the statutes of limitations is to compel plaintiffs to assert their claims "within a reasonable period while the evidence is fresh in the minds of the parties and witnesses." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)); see *Murray v. San Jacinto Agency Inc.*, 800 S.W.2d 826, 828 (Tex. 1990); *Medina v. Tate*, 438 S.W.3d 583, 598 (Tex. App.–Houston [1st Dist.] 2013, no pet).

63.    Since the note was accelerated in November, 2015, enforcement of the Note and Deed of Trust would be barred if the Deed of Trust had not been foreclosed by November, 2019.

64.    The passage of time, and PHH's continued failure to enforce the Deed of Trust are facts which render the Deed of Trust to be void and which preclude enforcement.

### The Summary Judgment Evidence in this case did not Unequivocally Establish that the Acceleration Was Abandoned or Withdrawn

65.    Once a lender has accelerated the maturity date of a note, the lender can restore the maturity date by abandoning the acceleration as if the acceleration had never happened. *Holy Cross Church of God in Christ v. Wolf*, supra.

66.    Abandonment is based on the concept of waiver, which requires the showing of three (3) separate elements. First, the party has an existing right; Second, the party has actual knowledge of the right; and finally, the party actually intends to relinquish the right or engages in intentional conduct which is inconsistent with that right. *Ulico Gas Co. v. Allied Pilots Asso.*, 262 S.W.3d 773 (Tex. 2008).

67.     Under Texas law, the critical factor as to whether the lender has abandoned a prior acceleration is intent. *Swoboda v. Ocwen Loan Servicing, L.L.C*., 579 S.W. 3d 628 (Tex. App. – Houston [14th Dist.] 2019, no pet).

68.     Intent is the critical and most important element, and its manifestation must be unequivocal. Notices sent by a lender must "unequivocally manifest an abandonment." *Swoboda v. Ocwen Loan Servicing, L.L.C*., supra, at 634.

69.     The Fifth Circuit has also held that in order to abandon a prior acceleration a notice or a monthly statement and/or any request for payment "must have demonstrated an unequivocal manifestation" of the payees intent to no longer accelerate the loan. *Colbert v. Wells Fargo Bank, N.A.,* 850 Fed. Appx. 870, 875 (5th Cir. 2021); *Bank of New York Mellon v. Meachum*, 21 – 10766 (5th Cir. 2022).

70.     In *Lyons v. Select Portfolio Servicing, Inc.,* 748 F. Appx 610, (5th Cir. 2019) the Fifth Circuit stated a notice informing a mortgagor of the amount owed to return a loan to good standing **did not manifest any intent to abandon acceleration**. *Id*., at 611-612. (emphasis added)

71.     The best means of abandonment of an acceleration is through formal written notice of rescission.  Tex. Civ. Prac. & Rem. Code §16.038(a).  That did not happen in this case.

72.     In the present case there was no formal written notice of the recission of the acceleration.

73.     Abandonment can also be accomplished by payment on the note.

74.     Again, this did not happen.

75.     The acceleration can be abandoned by an agreement between the parties.  Again this did not happen.

76.     Acceleration can also be abandoned by some other joint action by the lender and

the borrower. *Swoboda v. Ocwen*, supra at 633.

77.    The burden to establish an agreement or abandonment is on the PHH.  *Id.*

78.    The evidence does not establish an agreement to reinstate the Note or to abandon the acceleration.  There was no evidence of any agreement between PHH and Demetrius Harris, the Borrower.  PHH does not even make this argument.

79.    Whether a lender has abandoned an acceleration is generally a question of fact*. Id.,*

80.    In making its decision in the *Swoboda* case, Justice Christopher, writing the decision for the Court, relied on the Texas Supreme Court case of *Ulico Gas Co. v. Allied Pilots Asso.*, 262 S.W. 3d 773, 778 (Tex. 2008).

81.    In the present case, there was no evidence that there was any "joint action" between PHH and the borrower Harris, or even Ankus.

82.    A number of state and Federal decisions relied on a series of Federal cases which included *Boren v. U.S. Nat. Bank Assn.,* 807 F.3d 99 (5th Cir. 2015).

83.    These cases all hold that abandonment of acceleration occurs when a lender sends the borrower a post acceleration notice which requests payment of a lesser amount than the entire accelerated balance.  These court decisions are based on an "Erie Guess" in which the Fifth Circuit "guesses" how the Texas Supreme Court would decide the issue.

84.    These cases originated with the Fifth Circuit Court of Appeals decision in *Boren v. U.S. Nat. Bank Assn.*, supra.  In that case, the Fifth Circuit Court of Appeals was presented with the question of whether, under the facts of the case, two notices which were sent by the lender would constitute the abandonment of a prior acceleration as a matter of law.

In its discussion of the case, the Court stated:

"Where, as here, the proper resolution of the case turns on the interpretation of Texas law, we are bound to apply Texas law as

interpreted by the state's highest court." *Am. Int'l. Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 Fd3d 558, 564 (5th Cir. 2010) (internal quotations and alterations omitted). Because the Texas Supreme Court has not decided whether a lender may abandon its acceleration of a loan by its own unilateral actions and, if so, what action it must take to effect abandonment, we must make an "Erie guess" as to how the Court would resolve this issue. *Id.*

*Boren v. U.S. Nat. Bank Assn.*, supra at 104-105.

**PHH's evidence fails to establish that PHH abandoned the acceleration of the Note.**

85.    In the present case, the only evidence of abandonment which is offered by PHH are some of computer generated letters which were sent to Harris..

86.    It is very clear that these letters do not provide any clear or unequivocal evidence that the acceleration was abandoned.

87.    The Fifth Circuit has specifically held that a notice or a statement which only states the amounts due is not evidence of abandonment of acceleration because they do not provide "clear intent" to abandon the acceleration, *Lyons v. Select Servicing, Inc,* 748 F. App'x 610, 611-612(5th Cir. 2019). In *Lyons* the Fifth Circuit held that a post-acceleration notice which informed a mortgagor of the amount which was owed did not manifest intent to abandon acceleration. *Id.;* see also *Colbert v. Wells Fargo Bank, N.A.,* 20-10394 (5th Cir. 2021).

88.    First, the letters in the present case which are attached as exhibits to PHH's Motion are obviously computer generated. There are no signatures.

89.    Second, the letters do not state that the acceleration has been or will be abandoned.

90.    The statements do not state that the loan has been on will be reinstated.

91.    Additionally, in the present case, the letters admittedly do not even contain any reinstatement amount.

92.    In reviewing the lenders post acceleration letter in the *Swoboda* case the Court

found that in order for a letter or other notice to abandon a prior acceleration there must be an "unequivocal manifestation" of the abandonment of the acceleration. The Court held in that case that there must be evidence of an "unequivocal manifestation" of intent to abandon the prior acceleration.

> "To accomplish a unilateral abandonment, the lender must so act as to justify the [Borrower] in believing and acting upon the belief that the effect of the failure to pay an installment was to be disregarded and that the contract should stand as if there had been no default." *Id.*, at 636

93.    The letter must make the borrower believe that the original maturity date had been restored as if there had been no default and that all prior defaults had been disregarded. *Id.*

94.    In the present case, the only letters or written communications sent by PHH were letters starting with a letter dated March 10, 2015.

95.    A review of these letters reflect that there is no "unequivocal manifestation" to the borrower, Harris, or to anyone else that the original maturity date had been restored and that the numerous defaults had been or would be disregarded.

96.    In reviewing the letters offered by PHH, it appears that these letters were computer generated letters. The letters are not signed and there are no signatures.

97.    Additionally, the letters were not signed. There is no name or signature on the letters.

98.    A review of the various letters reflect that they do not and did not constitute sufficient evidence to constitute abandonment of the acceleration.

99.    At the outset the fact that there may have been an offer of a loan modification is not, in and of itself evidence of the abandonment of a prior acceleration. *Swoboda*, supra.

100.    The letters, do not come close to satisfying the requirements set forth in *Boren* and the subsequent cases. The letters do not state anywhere that the acceleration had been or would

be abandoned, even if payments were made.  The letters do not state an amount which would be required in order to reinstate the loan.

101.    The letters make vague references to a possible loan modification but do not state any of the terms of the modification.

102.    The letters do not state the amount which would be owed and do not state any terms under any potential modification agreement.

103.    The first letter (PHH Ex. A-4 is dated March 10, 2015.  This letter is prior to the acceleration letter and simply states the amounts due.  This letter proves nothing and is irrelevant.

104.    The second letter (PHH Ex. A-5) is dated July 29, 2015.  Again, this letter also proves nothing.

105.    The next communication is a short chain of emails (PHH Ex. A-6).  This chain of emails certainly does not state that the loan has been reinstated or that the prior acceleration has been or will be abandoned.  At most, it indicates a mistaken belief that Harris was on active duty in the military.  At most it indicates that the date of the scheduled foreclosure would be delayed for a period of time which was less than a year.  Again, this email chain does not reinstate the Note, does not abandon the prior acceleration and actually reinforces that PHH intended to foreclose its lien in the near future.  Additionally, there is no evidence that any correspondence or communication was ever sent to Harris.

106.    The next letter is dated April 24, 2018.  (PHH Ex. A-7).  Again, this letter only reinstates the amounts due.  It does not state that the Note has been or will be reinstated.  The letter also states other options which may be available to Harris such as refinancing the loan, a possible loan modification on undefined terms, a forbearance or repayment plan on undefined terms, a sale of the Property, a potential short sale of the Property on undefined terms or a possible deed in lieu

15

of foreclosure.

107.    This letter certainly does not provide any clear intent to reinstate the Note or to abandon the acceleration.

108.    PHH Ex. A-8 is a letter dated January 9, 2019, which is simply a response to an apparent undisclosed communication from either Harris or a person named Promise Harris. This letter proves nothing.

109.    PHH Ex. A-9 is the Certificate from the U.S. Department of Defense which is discussed above. The Certificate is for a person designated simply named "Harris" with no first name, no birth date and no complete social security number. The Certificate does not identify Demetrius Harris and there is no evidence that this Certificate applies to Demetrius Harris.

110.    The Certificate is also dated October 29, 2020, which is more than two years after Ankus purchased the Property.

111.    The Certificate is irrelevant, no property authenticated and is worthless.

112.    There is no other evidence provided by PHH to establish that the Note was reinstated or that the acceleration had been or would be abandoned.

113.    The letters at most simply discuss a potential loan modification. They do not state that the loan will be modified.

114.    The letters do not abandon the prior acceleration and does not state that the acceleration will be abandoned.

115.    The letters do not "unequivocally manifest" an abandonment of the acceleration.

116.    The letters certainly falls far short of the "unequivocable intent" required.

117.    These letters fail to satisfy any "unequivocal manifestation" of an intent to abandon the acceleration as required by law.

118.    The letters do not state that loan had been or would be reinstated.  The letters do not state that the prior acceleration had been or would be abandoned.

119.    Nowhere in the letters is there any statement that the original maturity date, which under the Note had been, in fact, restored to the original date.

120.    The letters do not state that the original maturity date had been or would be restored.

121.    The letters do not state anywhere that the prior acceleration had been or would be abandoned.

122.    The letters do not state that all prior defaults had been or would be disregarded.

123.    There was no statement that Harris was to restart making his regular payments on a monthly basis.

124.    It is obvious that these letters were computer-generated letters.

125.    A computer cannot constitute any evidence of intent, especially as a matter of law.

126.    The letters certainly do not evidence an "unequivocal manifestation" that the prior defaults had been disregarded and that the original maturity date had been restored.  *Id.*

127.    Under the holding of the *Swoboda* case there is simply nothing in the letters which would make Harris believe that the original maturity date had been restored as if there had been no default and that all prior defaults had been disregarded.

**PHH's Argument that the deferral of the foreclosure sale based on the unsupported claim by Harris that he was on active duty in the military is without merit.**

128.    PHH's Argument that the deferral of the foreclosure sale based on the unsupported claim by Harris that he was on active duty in the military is without merit.

129.    PHH claims that it was required by law to cancel the scheduled foreclosure sale because Harris was on active duty in the U.S. Military and was entitled to benefits allowed under the SCRA.

130.    As discussed in more detail above, PHH has provided no evidence that Harris was in the military or was entitled to any benefits under the SCRA.

131.    To the contrary, when the HOA filed its lawsuit, it provided the Court with a Certificate from the U.S. Department of Defense which stated that Harris was **not** in the military. See Ex. 5.

132.    There was, therefore, no evidence that the SCRA was applicable or that Harris was entitled to any benefits under the SCRA.

133.    Even if the SCRA applied, the statute does not provide that any note which has been accelerated would be reinstated.  The statute is totally silent on this part.

134.    At best, under the SCRA, the statute of limitations may have been tolled while any SCRA benefits are in effect.  See 50 U.S.C.A. Section 3936.  Therefore, under a best-case scenario the statute of limitations may have been tolled for the time period, less than a year, in the which PHH had deferred the foreclosure sale.

135.    Even if the statute would have been tolled, for this time period, the four year statute of limitations would still require PHH to foreclose no later than November of 2020 which it did not do.

136.    Therefore, even if the SCRA benefits were applied as claimed by PHH (from November 7, 2016 to October 27, 2017) enforcement of the Deed of Trust would still be barred by the statute of limitations.

137.    Because this SCRA did not and does not apply, the Court must analyze whether the acceleration had been abandoned under the authorities which are cited above.

138.    As discussed above, there was no clear intent expressed by PHH to abandon the acceleration and no clear intent to reinstate the terms of the original Note.

**The evidence supports Ankus's claim that PHH's Deed of Trust is void and should be stricken as a cloud on Ankus's title to the Property**

139.    In its most recent Complaint, Ankus seeks a judgment declaring the Deed of Trust to be void and striking the Deed of Trust as a cloud on Ankus's title because enforcement of the Deed of Trust was and is barred by the applicable statute of limitations.

140.    Ankus is the owner of the Property in issue and has filed this action to quiet title. A suit to quiet title is equitable in nature and the principal issues in such suits is "the existence of a cloud on title that equity will remove." *Florey v. McConnell,* 212 S.W. 3d 439, 448 (Tex. App. – Austin 2016, pet denied).

142.    A cloud on title includes any deed, contract, lien or other instrument which is not void on its face that purports to convey an interest in or makes a charge upon the property of the owner, the invalidity of which would require proof. *Wright v. Matthews*, 26 S.W. 3d 575, 578 (Tex. App. – Beaumont 2000, pet. denied).  A suit to quiet title "enables the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Florey,* 212 S.W. 3d at 448 (quoting *Thompson v. Locke*, 1 S.W. 112, 115 (Tex. 1886).

143.    In order to recover in a title action which involved "clouds" on an undisputed owner's title to real property, the owner challenges an adverse interest that impacts the title of the owner. *Florey v. McConnell,* supra.

144.    A claim is sufficiently adverse if its assertion casts a cloud on the owner's title or enjoyment of the property. *Kratz v. Rodriguez,* 563 S.W. 2d 627, 629 (Tex. App. – Corpus Christi 1977, writ ref'd n.r.e.).

145.    To satisfy the requirements in a suit to quiet title a plaintiff must establish right, title or ownership in property and must allege or identify an adverse claim. *Wright v. Matthews,* supra at 578.

146.    In the present case, it is undisputed that Ankus is the owner of the property which is at issue in this case.  See Exhibit 1.  Ankus's ownership is not denied and, in fact is admitted by PHH.

147.    Ankus has also alleged and identified an interest which is claimed by PHH and which is adverse.  See Exhibit 3.

148.    Ankus has established proof that enforcement of the Deed of Trust claimed by PHH is barred by the statute of limitations.

149.    As stated elsewhere in this Motion, the applicable four-year statute of limitations for a nonjudicial foreclosure sale under a deed of trust is stated in §16.035 of the Civil Practice and Remedies Code.

150.    Where a sale under a deed of trust has not occurred within four (4) years of the date of maturity, the deed of trust is void.  *The Cadle Co. v. Butler,* 951 S.W. 2d 901 (Tex. App-Corpus Christ 1997, no pet.); *Woodside Assurance Inc. v. N.K. Resources, Inc.,* 175 S.W. 3d 421 (Tex. – App. – Houston [14th Dist.] 2005, no pet.).

151.    Since the sale was conducted within four (4) years, enforcement is barred under Texas law. Tex. Civ. Prac. and Remedies Code §16.035.

**SUMMARY JUDGMENT EVIDENCE**

152.    In support of this Response, Ankus relies on the Motion For Summary Judgment and the attached documents which were filed by PHH in this case.  References to exhibits in this Response are in reference to PHH's exhibits.

153.    The prior Motion and attached documents are hereby incorporated into this Response by reference and, for the sake of brevity, are not reattached to this Response.

## CONCLUSION

154.    The Note was accelerated at least by November 3, 2015.  This is undisputed.

155.    The evidence which has been provided by PHH fails to prove that PHH's acceleration of the Note was abandoned and does not prove that the Note was reinstated.

156.    The Summary Judgment evidence establishes that the Note was accelerated on November 3, 2015, and that the Deed of Trust was not foreclosed within four year of this date.

157.    The evidence establishes that the deed of trust is void.

WHEREFORE, Ankus, L.L.C., Plaintiff, requests that Defendant PHH's Motion for Summary Judgment be denied; and that, Plaintiff be granted all relief as it may show itself justly entitled.

Respectfully submitted,


By: */s/ Jerry L. Schutza*
      Jerry L. Schutza
      SBN: 17853800
      815 Walker, Ste. 1453
      Houston, Texas  77002
      Telephone: (713) 963-9988
      Email: schutzalaw@yahoo.com

      **ATTORNEY FOR PLAINTIFF
      ANKUS, L.L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was sent to opposing counsel and all parties of interest via electronic service on October 12, 2023.

**VIA ELECTRONIC SERVICE**

Helen Turner

*/s/ Jerry L. Schutza*
Jerry L. Schutza